UNITED STATES OF AMERICA
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO.: 4:07CV-118-M

AARRON EAVES, DARYLE EAVES, and
ESTATE OF TRINITY EAVES, Deceased                                    PLAINTIFFS

v.

UNITED STATES OF AMERICA                                             DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon motions in limine [DNs 63 and 65] filed by the plaintiffs and defendant and an exhibit list objection [DN 64] which mirrors the defendant's motion in limine. Fully briefed, these matters are ripe for decision.

A. **DEFENDANT'S MOTION IN LIMINE [DN 63]/EXHIBIT LIST OBJECTIONS [DN 64]**

Plaintiffs' Exhibits 36, 37, 38, 45, 55, 67, 68, 72, 73, 75, 78 and 80

The defendant seeks to exclude 12 exhibits identified by the plaintiffs on their exhibit list. The defendant contends that these exhibits, which it identifies as "expert reports," contain inadmissible hearsay and should therefore be excluded. The Court agrees with the defendant that expert reports prepared in anticipation of trial are generally inadmissible because they are considered hearsay. See Engebretsen v. Fairchild Aircraft Corp., 21 F.3d 721, 729 (6th Cir. 1994) (citing Fed. R. Evid. 702 & 703). However, there may be aspects of the reports which are admissible. For example, the data relied upon by the experts, if contained in the reports, may be admissible under FRE 703 to explain the basis for the expert's opinion. See id. And if the reports contain charts or summaries, those aspects may also be admissible under FRE

1006.  See United States v. Bakke, 942 F.2d 977, 985-86 (6th Cir. 1991).  The Court, at this time, is not prepared to preclude use of each of these exhibits at trial without knowing the purpose for which the exhibits will be used.  The defendant's objection to these exhibits is **RESERVED** until trial.

Plaintiffs' Exhibit 79

Plaintiffs' Exhibit 79 is a "fill-in-the-blank" document created by plaintiffs' counsel. Upon the request of the plaintiffs, Dr. Douglas, a physician that treated the Eaveses for their injuries, completed the form.  The defendant contends that this exhibit is hearsay.  The plaintiffs as "the proponent of a hearsay statement bears the burden of proving that the statement fits squarely within a hearsay exception or exclusion." United States v. Kendrick, 853 F.2d 492, 496 n.3 (6th Cir. 1988) (citation omitted).  Having failed to respond, the plaintiffs have not met their burden.  Therefore, the government's objection to Exhibit 79 is **GRANTED**.

Plaintiffs' Exhibits 42 and 67

Exhibit 42 is a letter sent by James Falk, attorney for the plaintiffs, to the U.S. Army Claims Service (USARCS) attorney.  This document primarily contains Mr. Falk's assessment of the value of the Eaves' injuries.  Exhibit 67 is a letter from the government's attorney to Mr. Falk discussing the possibility of supplementing expert reports and the identification of an additional expert during pretrial discovery.  The government argues that these exhibits are irrelevant. The plaintiffs have not responded to identify the relevancy of these documents, nor is the relevancy of the documents self-evident.  Accordingly, the government's motion as to Exhibits 42 and 67 is **GRANTED**.

Plaintiffs' Exhibit 83 (Second)

The defendant argues that this exhibit entitled "Email Correspondence of USARCS admitting no Contest of Liability," which is an e-mail from the USARCS attorney assigned to the plaintiffs' administrative claims, should be excluded as irrelevant and hearsay. In the email, the attorney stated:

> We are not contesting liability here. We agree that Mr. Howton was in the course and scope of his employment when he went off the road, striking your clients. We are not asserting a sudden emergency defense. There is nothing that Mr. Howton can tell us that will change the fact that he rear-ended your clients, who were then parked on the shoulder of the road.

(Pls.' Ex. 83.)

The defendant argues that a determination by the USARCS attorney that liability was not going to be contested, is irrelevant. They cite 28 U.S.C. § 2675(c) which provides: "Disposition of any claim by the Attorney General or other head of a federal agency shall not be competent evidence of liability or amount of damages." This provision has, at times, been interpreted as limiting the use of settlement offers as evidence of liability or damages. See Odin v. United States, 656 F.2d 798, 806 n.30 (D.C. Cir. 1981). In Odin, the D.C. Circuit discussed the possibility that "an unscrupulous claimant might file a claim with an agency to test the agency's willingness to settle, and then file a larger amended claim after the agency has granted the original claim in full and *thereby admitted a measure of liability*." Id. (emphasis added). The court noted, however, that such tactics "do not create a binding obligation on the government[,]" because "the Act itself bars the claimant from using the agency's previous settlement offer as evidence of liability or damages[.]" Id. (citing 28 U.S.C. § 2675(c)).

3

But the statement made by the attorney in the email does not appear to be a disposition of the claim, let alone a disposition made by the Attorney General or other head of a Federal agency. However, the statement made by the USARCS attorney conceding liability is similar to the admissions of the Secretary of Veterans Affairs and the agency's attorneys in Murrey v. United States, 73 F.3d 1448 (7th Cir. 1996). There, the Secretary of Veterans Affairs, Edward Derwinski, after performing an investigation of the care provided to a patient at a veterans hospital, publicly stated that "poor care had contributed to the deaths of six patients at the hospital" including the plaintiff's death. Id. at 1455. The department's lawyers informed the plaintiff personally that her husband's death was "'caused by a medical misadventure[.]'" Id. The Seventh Circuit concluded that, although these statements were not judicial admissions, they were "[e]xtrajudicial admissions by a party opponent" and "admissible as evidence[.]" Id. (citing Fed. R. Evid. 801(d)(2)). "People sometimes do make mistaken admissions, which is why an extrajudicial admission, not being made with the same deliberateness as a judicial admission, is not conclusive on the issue admitted. But it is evidence." Id.

The government also contends that any admission of liability by the attorney is hearsay because it was made outside the scope of the attorney's authority which was limited to claims not in excess of $25,000. A similar argument was made by the government in Murrey. The Seventh Circuit acknowledged that the argument might have some merit if the court treated the statements by the attorneys as judicial admissions. Id. at 1456. However, "[w]hen the admissions are used only as evidence, the argument collapses. The fact that an agency makes a case more difficult to defend by the Department of Justice because the head of the agency or

4

one of its officers makes damaging admissions is a peril of litigation, not an unauthorized settlement offer." Id. Here, the USARCS attorney was assigned to handle the plaintiffs' administrative claim. Certainly it was within her authority to comment upon the merits of the claim.[1] The government's motion as it relates Exhibit 83 is **DENIED**.

Testimony of Patricia and Randel Eaves

The government objects to the testimony of Patricia and Randel Eaves on the grounds that the witnesses were not appropriately disclosed by the plaintiffs. The government represents that the plaintiffs failed to disclose these witnesses as required by Fed. R. Civ. P. 26(a)(1)(A) and that it first learned of the plaintiffs intent to present these individuals from the plaintiffs' witness list. The Court's Scheduling Order provides that "no witness not previously disclosed as one likely to have discoverable information . . . shall be allowed on the final witness and exhibit list, except for good cause shown." (DN 17 at 1.) The plaintiffs, having failed to respond to this objection, have not shown cause as to why these witnesses were not previously identified. Accordingly, the government's objection to these witnesses is **SUSTAINED** and Patricia and Randel Eaves will not be permitted to testify at trial.

FRE 106 Objection

The government objects generally to numerous exhibits in which the plaintiffs have identified portions of writings, records, and recorded statements. The government objects to

---

[1] The government also contends that 28 C.F.R. § 14.6(d) limits the attorney's authority. To be sure, the cited regulation does limit an agency's authority to "adjust[], determine[], compromise[], or settle[]" particular claims. See 28 C.F.R. § 14.6(d). However, the Court does not find that the attorney, by commenting on the merits of the claim, did any of those things, and hence, was not acting outside the scope of her authority.

the introduction of these partial documents arguing that the entire writing or recorded statement should be introduced under FRE 106. In particular, the government notes that the plaintiffs list some, but not all of the photographs taken by the Kentucky State Police at the scene of the accident. The government wants the entire set to be introduced contemporaneously, including a photograph which shows Mrs. Eaves's underwear on the front driver's seat. The Court disagrees. FRE 106 pertains to a partial "writing or recorded statement," see FRE 106, but does not apply to photographs. The government can certainly introduce those photographs either on cross-examination or in its case in chief, but the plaintiffs are not required to do so. The parties shall otherwise be prepared to introduce the entirety of each exhibit that only contains partial writings and recorded statements. At trial, the Court will make a determination as to whether the remaining portion of those exhibits "ought in fairness to be considered contemporaneously" with the exhibit. This portion of the government's motion is **DENIED in part** and **RESERVED in part**.

### B. PLAINTIFFS' MOTION IN LIMINE [DN 65]

Government's "Act of Nature" and "Diabetic Episode" Defenses

The plaintiffs contend that the defenses they expect the government to assert at trial–namely, "act of nature" and "diabetic episode" defenses–would be taken in bad faith. They argue that there is simply no admissible evidence to support the proposition that high crosswinds or a diabetic episode was the cause of the accident. Therefore, they seek to preclude all evidence related to these defenses. The defendant contends that the plaintiffs' motion in limine is a disguised dispositive motion and should be denied on that ground. The defendants

also argue that plaintiffs have cited no evidentiary basis to exclude these defenses.

The Court finds that the plaintiffs' motion in limine is improper because it is asking the court to consider the weight and sufficiency of the evidence rather than asking the court to preclude the evidence on evidentiary grounds.  See DXS, Inc. v. Siemens Med. Sys., Inc., 100 F.3d 462, 475 (6th Cir. 1996) ("when determining whether evidence is relevant, the district court must not consider the weight or sufficiency of the evidence") (citing Douglass v. Eaton Corp., 956 F.2d 1339, 1344 (6th Cir. 1992)).  The plaintiffs, for instance, would have the court preclude the government from introducing police reports, testimony of police officers, and reports from nearby wind stations–all of which would tend to suggest that windy conditions were present at the time of the accident–merely because Mr. Howton testified in his deposition that he did not recall the weather conditions.  They would also have the Court preclude evidence that Mr. Howton was being treated for a diabetic emergency at the scene of the accident and may have had elevated glucose levels at the time of the accident merely because there was testimony to suggest otherwise.  The plaintiffs also note that the government has not identified an expert to testify that high crosswinds or high glucose levels caused the accident.  However, this goes to the weight, not the admissibility of the evidence.

A statement from the plaintiffs' motion sums up their argument: "At the conclusion of discovery, the Defendant had presented no *credible* evidence" related to its defenses.  (Pls.' Mot. in Limine at 5 (emphasis added).)  That may be true, and if it is, the trier of fact would likely discredit the government's evidence related to those defenses.  But "even if a district court believes the evidence is insufficient to prove the ultimate point for which it is offered, it

may not exclude the evidence if it has the slightest probative worth." DXS, Inc., 100 F.3d at 475 (quotation omitted). Therefore, the plaintiffs' motion, insofar as it requests the exclusion of evidence related to these defenses, is **DENIED**.

Testimony of Dr. William Smock

The plaintiffs move the Court to prelude Dr. Smock's testimony. They contend that Dr. Smock improperly supplemented his expert report and that his testimony should be precluded in its entirety. The Court disagrees. Dr. Smock prepared his initial report on January 8, 2009. In that report, he reserved the "opportunity to supplement [his] opinions as additional information is reviewed." It became necessary for Dr. Smock to supplement his report after the Eaveses agreed to turn over the clothing they were wearing at the time of the accident in June 2009. At that time, Dr. Smock examined the clothing with an alternate light source, identified a fluorescent substance, and opined in his deposition that "with a reasonable degree of medical and scientific probability at this point without any additional testing that I do believe [the fluorescent substance] to be semen . . . ."

Initial reports from the lab were negative for semen, but after the Government sent the clothing to an additional lab, that additional lab concluded that the substance on the clothing was semen. Dr. Smock supplemented his report to note this finding as additional support for his opinion. The Court does not find that Dr. Smock's testimony must be excluded. In his initial report he opined that the plaintiffs were in a horizontal position at the time of the accident. After the plaintiffs made their clothing available for testing, Dr. Smock supplemented his opinion to conclude that the plaintiffs were having sexual intercourse at the time of the

8

accident. The plaintiffs had the opportunity to cross-examine Dr. Smock on this amended opinion during his deposition. Additionally, they could have requested an additional deposition of Dr. Smock after the lab reported the substance on the clothing was semen. The Court does not find that this was an improper supplementation of Dr. Smock's report such that exclusion of his testimony would be warranted.

The plaintiffs also suggest that Dr. Smock's testimony is improper because the additional laboratory testing conducted by the government went beyond the Court's June 29, 2009 Agreed Order and that the testing was conducted without the plaintiffs' consent. The government argues that its testing of the clothing was appropriate since the initial lab did not conduct the proper test. The Court does not find that the Agreed Order was violated when the government sent the clothing off for additional testing. The Agreed Order merely provided that the clothing would be sent to a laboratory for testing. It did not limit the amount of testing that was permitted. And if the initial laboratory performed the improper test on the clothing, there was no harm in having the clothing subjected to the proper testing as contemplated by the Agreed Order. Whether this additional test was more accurate than the initial test goes to the weight, but not the admissibility of the evidence.[2] Accordingly, this aspect of the plaintiffs' motion is **DENIED**.

<u>Mrs. Eaves's Statement to the Army's Claims Service Attorney</u>

The plaintiffs also seek to exclude statements made by Mrs. Eaves to the Army's Claims

---

[2] The plaintiffs additionally argue that the testing of the clothing went beyond Dr. Smock's expertise. But Dr. Smock did not perform the test. The testing was conducted by an independent lab, and Dr. Smock only relied upon the results in forming his supplemental opinion.

9

Service Attorney. Mrs. Eaves's precise statement is not part of the record. According to the government:

> Mrs. Eaves stated that, prior to the accident, she and her husband had few arguments and their sex life was the "greatest." In describing her sex life, Mrs. Eaves told Army officials that she and her husband liked to "go out parking," as she termed it. When she was asked what was meant by this, Mrs. Eaves stated that she and her husband would take their children to her parents' house and go out and park the car somewhere and have sex, indicating that they would have sex "like teenage kids would."

(Def.'s Resp. at 11.) The plaintiffs contend that this statement was made during settlement negotiations and should be excluded under FRE 408.

The plaintiffs reference two documents to support their position. The first is a letter sent by James Falk to the USARCS attorney in which Mr. Falk informs the attorney that he would make his clients available for an interview. The second document is an email from the USARCS attorney to Mr. Falk in which she agrees to interview the Eaveses on a particular date. It also states: "The purpose of my interview will be to assess the quantum of damages in the hope that we can reach an administrative settlement without the need for incurring the expense of litigation." She also indicates that if the case did not settle, "then the case will be handled by the U.S. Attorney's office, and that office would represent the U.S. in any formal discovery." For its part, the government submits the declaration of Lieutenant Colonel Mathers, Chief of the Tort Claims Division of USARCS. In his declaration, Lieutenant Colonel Mathers testified that the policy of USARCS is to interview claimants in order "to evaluate the merits of the claim, including liability and damages evaluations. The claimant interview is considered to be a crucial part of the *investigation* of a tort claim filed against the Army." (Decl. Lieutenant

Colonel Mathers ¶ 3.) He also testified that the Army never considered the interview of Daryle Eaves to be a part of any compromise negotiations regarding the claim. (Id. ¶ 5.) The government also argues that none of the evidence presented by the plaintiffs supports their position that Mrs. Eaves's statement was made during compromise negotiations.

FRE 408 provides that "conduct or statements made in compromise negotiations regarding the claim" are "not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim . . . or to impeach through a prior inconsistent statement or contradiction[.]" FRE 408. The party seeking to exclude the statement must make a "substantial showing" that it was made as part of compromise negotiations. See Raybestos Prods. Co. v. Younger, 54 F.3d 1234, 1241 (7th Cir. 1995); Smith v. Highland Park Ruritan Club, No. 3:06-CV-351, 2008 WL 2669107, at *3 (E.D. Tenn. June 27, 2008) ("The party seeking to exclude a statement under Rule 408 bears the burden of persuading the Court that the statement was made as part of compromise negotiations.") (citation omitted). After a careful review of the record, the Court finds, as a factual matter, that Mrs. Eaves's statement was not made as part of compromise negotiations. She did not go the interview in order to discuss settlement options or to make a compromise. She went there in order for the USARCS attorney to assess the amount of damages suffered by the plaintiffs. Both parties were clearly contemplating the potential for later settlement, but that was not the purpose of the interview. The letter from Mr. Falk did not indicate that the interview of the Eaveses "would only be granted in furtherance of settlement discussions" as the plaintiffs now suggest. Instead, the plaintiffs apparently contemplated settlement discussions *following* the interviews. And

11

although the letter from the USARCS attorney does mention the possibility of an administrative settlement, that possibility would only arise *after* their informal deposition of the Eaveses. Nor do the plaintiffs indicate that any compromise negotiations took place at or near the time of the interview such that the interview could have taken place during the course of the negotiations.

Notwithstanding the finding by the Court that Mrs. Eaves's statements were not made in compromise negotiations, the Court is not convinced that the statements she made are otherwise admissible under FRE 406 as argued by the government. FRE 406 provides: "Evidence of the habit of a person . . ., whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person . . . on a particular occasion was in conformity with the habit . . . ." FRE 406. A habit "is a regular response to a repeated specific situation." 2 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 406.02[2] (2d ed.) (footnote omitted). When evidence of habit is likely to conflict with the requirements of FRE 404, "'the offering party must establish the degree of specificity and frequency of uniform response that ensures more than a mere 'tendency' to act in a given manner, but rather, conduct that is 'semi-automatic' in nature." Bowman v. Corr. Corp. of Am., 350 F.3d 537, 549 (6th Cir. 2003) (quoting Simplex, Inc. v. Diversified Energy Sys., 847 F.2d 1290, 1293 (7th Cir. 1988)); Wilson v. Wolkswagen of Am., Inc., 561 F.2d 494, 511 (4th Cir. 1977) (habit evidence must be "numerous enough to base an inference of systematic conduct and to establish one's regular response to a repeated specific situation").

The Court does not find that Mrs. Eaves's statement, as articulated by the government, is sufficient to establish a habit so as to make this evidence admissible under FRE 406. It does

not show that the Eaveses engaged in this type of sexual behavior in response to repeated specific situations. In addition, the Eaveses did not act in conformity with her statement because their daughter, Trinity, was in the vehicle with them at the time of the accident. Simply put, the government's evidence does not sufficiently establish a habit so as to make her prior acts admissible under FRE 406. But this does not preclude the government from inquiring into whether the Eaves were engaging in sexual conduct at the time of the accident.

The government also argues that it should be permitted to use Mrs. Eaves's statement to the USARCS attorney to impeach her testimony. The government contends that Mrs. Eaves gave testimony in her deposition that contradicted her prior statement to the USARCS attorney. In order to impeach Mrs. Eaves regarding these misstatements made in her deposition, it may become necessary for the government to mention the prior statement to the USARCS attorney. And depending upon the development of Mrs. Eaves's testimony at trial, the government may have the opportunity to introduce extrinsic evidence of that prior statement. Therefore, precluding the government from mentioning or otherwise introducing the statement is not warranted at this time. Of course, if so introduced, it will be for purposes of impeachment only and not as substantive evidence. Accordingly, this aspect of the plaintiffs' motion is **RESERVED** until trial.

<u>Defendant's Exhibit 27 (Copies of Past and Current Actions Against Aarron and/or Daryle Eaves in State courts</u>

The plaintiffs also seek to exclude Defendant's Exhibit 27 because it contains evidence of prior bad acts. Exhibit 27 contains various civil and criminal pleadings asserted against the Eaveses including a criminal complaint against Mrs. Eaves for theft by deception and a civil

foreclosure complaint. The government represents that it only intends to introduce the exhibit for purposes of impeachment. Because the government intends only to use this exhibit for purposes of demonstrating Mrs. Eaves's character for truthfulness, its admissibility is governed by FRE 608 and 609. FRE 608 provides that "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence." FRE 608(b). Therefore, to the extent Exhibit 27 contains court documents other than convictions for crimes that are admissible under FRE 609, the plaintiffs' motion is **GRANTED**. FRE 609(a)(2), however, does allow extrinsic evidence of convictions for crimes that require proof or admission of an act of dishonesty or false statement.[3] If Mrs. Eaves was convicted of theft by deception, then it would appear that evidence of that conviction is admissible under FRE 609(a)(2). To that extent, the plaintiffs' motion is **DENIED**.

<u>Other Evidence that Defendant was not Negligent</u>

The plaintiffs seek to preclude the government from presenting any evidence suggesting that Mr. Howton was not negligent in striking the rear of the plaintiffs' automobile. They contend that "it is clear and undisputed that . . . George Howton, failed to keep a proper lookout, failed to keep control of his vehicle, and/or was traveling at an excessive rate of speed, or he would have been able to stop." (Pls.' Mot. in Limine at 14.) The plaintiffs, in essence, are arguing that there is no genuine issue of material fact and that Mr. Howton was negligent as a

---

[3] FRE 609(a)(1) also permits extrinsic evidence of convictions for crimes that were punishable by death or imprisonment in excess of one year regardless of whether the crime involved an act of dishonesty or false statement. But such crimes are not present here.

14

matter of law. But the plaintiffs did not seek summary judgment on that issue, and cannot, by way of a motion in limine, prevent the defendant from asserting its defenses. Similarly, the plaintiffs did not move for summary judgment on the government's affirmative defense related to comparative fault. And comparative fault is relevant to the amount of damages that may be recovered by the plaintiffs. Therefore, the government should not be precluded, through a motion in limine, from presenting evidence of this affirmative defense. This portion of the plaintiffs' motion is **DENIED**.

### Testimony of Ms. Sharon Brown Lane

The plaintiffs also seek to preclude the testimony of Ms. Sharon Brown Lane as it relates to the diminishment of the Eaves' future earning capacity. They contend that the testimony is wholly based upon another's expert opinion which is improper. Apparently, Ms. Lane will testify that the Eaveses have not suffered any diminishment in future earning capacity. She formed this opinion based upon the opinion of a psychologist who will testify that the Eaveses are not suffering from post-traumatic stress disorder. The government argues that the plaintiffs are attacking the reliability of Ms. Lane's opinion which is an untimely Daubert motion. They also contend that it is not improper for an expert to rely upon the opinions of another expert.

In pertinent part, FRE 703 provides:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted.

FRE 703. The Advisory Committee Notes recognize that experts may rely upon the opinions

15

of other experts: "Thus a physician in his own practice bases his diagnosis on information from numerous sources and of considerable variety, including . . . reports and opinions from nurses, technicians and other doctors . . . ." Advisory Committee's Notes on Fed. R. Evid. 703; see also 4 Weinstein & Berger, Weinstein's Federal Evidence § 703.04[3] ("The number of sources on which experts in various fields of expertise might reasonably rely to obtain information for the formation of opinions and inferences is virtually infinite. A few of those that the courts have considered with regularity are the following . . . opinions of other experts[.]") (footnote omitted). This aspect of the plaintiffs' motion is **DENIED**.

cc:     Counsel of Record