**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**

**CIVIL ACTION NO.: 4:07CV-118-M**

**AARRON EAVES, et al.**                                              **PLAINTIFFS**

**v.**

**UNITED STATES OF AMERICA**                                          **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court upon a motion by the defendant, United States of America, to alter or amend [DN 85] the Judgment previously entered by the Court. Fully briefed, this motion is ripe for decision.

**I. MATHEMATICAL ERROR**

The government correctly notes that the Court committed a mathematical error in apportioning damages to the United States. It found the United States to be responsible for 80% of the Eaves' damages, but entered a judgment against the United States for 90% of those damages. Therefore, the chart contained on page 24 of the Court's Findings of Fact and Conclusions of Law [DN 83] is amended to read as follows:

|  | **Daryle** | | **Aarron** | | **Estate** | |
|---|---|---|---|---|---|---|
|  | **Total Damages** | **U.S.'s Share** | **Total Damages** | **U.S.'s Share** | **Total Damages** | **U.S.'s Share** |
| **Loss of Consortium** | 10,000 | 8,000 | 20,000 | 16,000 | n/a | n/a |
| **Affection & Companionship** | 200,000 | 160,000 | 200,000 | 160,000 | n/a | n/a |
| **Future Earning Capacity** | 0 | 0 | 0 | 0 | 1,472,507 | 1,178,005.60 |
| **Pain and Suffering** | 60,000 | 48,000 | 35,000 | 28,000 | $0 | $0 |
| **Total** | 270,000 | 216,000 | 255,000 | 204,000 | 1,472,507 | 1,178,005.60 |

Consistent with these amended calculations, Part III of the Court's Findings of Fact and Conclusions of Law is amended to read as follows:

"Accordingly, the Court finds in favor of the plaintiffs, Aarron Eaves, Daryle Eaves, and the Estate of Trinity Eaves, and against the defendant, United States of America. A judgment will be entered for the plaintiff, Aarron Eaves, in the amount of $204,000, for the plaintiff, Daryle Eaves, in the amount of $216,000, and for the plaintiff, Estate of Trinity Eaves, in the amount of $1,178,005.60, to be distributed in accordance with KRS 411.130(2)."

## II. APPORTIONMENT

The government next argues that the Court was in error when it declined to follow the holding of Citizens State Bank v. Seaboard Sys. R.R., Inc., 803 S.W.2d 585 (Ky. Ct. App. 1991). In that case, the passenger of an automobile was killed when the automobile, being driven by her husband, was struck by a train. Id. at 586. The passenger's husband and their daughter, who was also a passenger in the vehicle, survived the crash. Id. In a lawsuit against the railroad company and others, the jury found that the wife's estate was damaged in the amount of $500,000 and that the husband and railroad company were each 50% at fault in causing the accident. Id. But for the husband's own negligence in causing the death of his spouse, he and his daughter each would have been 50% beneficiaries under Kentucky's wrongful death statute. Id. at 589. To account for the husband's negligence, the trial court reduced the total damages by 50%, or $250,000, representing the share the husband would have received under the statute, essentially barring him from recovery. Id. The trial court then ordered the husband and the railroad company to each pay half of the remaining judgment to

the daughter, or $125,000 each.  Id.

The main issue for the court on appeal was whether a negligent beneficiary is barred from recovery for his contributory negligence, or whether the principle of comparative negligence announced by the Kentucky Supreme Court in Hilen v. Hays, 673 S.W.2d 713 (Ky. 1984) supplanted that doctrine in wrongful death actions.  Id. at 589.  Reversing the decision of the trial court, the appellate court concluded that a negligent beneficiary is not precluded from recovering under such circumstances, but rather, his or her damages are reduced only "'in proportion that the claimant's contributory negligence bears to the total negligence that caused the damages.'"  Id. (quoting Hilen, 673 S.W.2d at 720).  In applying this principle of Hilen, the court of appeals first noted that the daughter, a non-negligent beneficiary, was entitled to her entire share, or $250,000, to be paid equally by the railroad company and the husband.  Id. at 590.  The husband, "however, while not completely precluded from recovery, *is barred to the extent that his negligence caused the death of his wife*."  Id. (emphasis added).  Hence, the court reduced his $250,000 share by 50% to the sum of $125,000.  Id.  Although it would appear that reducing the husband's damage award by 50% and requiring him to pay 50% of his daughter's award would have satisfied the requirements of Hilen, the court nevertheless went one step further.  Without explanation, it concluded that "[t]he total amount of the award, $375,000–$250,000 representing [the daughter's] share, and $125,000 representing [the husband's] share–shall be paid . . . in equal amounts from [the railroad company] and [the husband], $187,500 each."  Id.    The government urges the Court to apply this methodology to calculate the amount Mr. and Mrs. Eaves may recover from the United States under

3

Kentucky's wrongful death statute. If the Court were to apply this methodology, it would first be required to determine the amount each beneficiary would be entitled under the wrongful death statute absent comparative fault. In this case, the total damages sustained by Trinity's estate, $1,472,507, would be divided equally between Trinity's parents, or $736,253.50 each. Each share would then be reduced by each beneficiary's own fault in causing Trinity's death. Here, that is 10% or $73,625.35 resulting in the sum of $662,628.15 each. Combining the two shares together would result in a damage award for the estate in the amount of $1,325,256.30, 80% of which would be paid by the United States. Therefore, under this methodology, the United States would be required to pay $1,060,205.04.

The government argues that this methodology was again utilized by the Kentucky Court of Appeals in Holloway v. Holloway, No. 2007-CA-001386-MR, 2008 WL 4754872 (Ky. Ct. App. Oct. 31, 2008) and that the Kentucky Supreme Court subsequently denied discretionary review of the Holloway court's utilization of such methodology. (See DN 85, Exs. A-D.) The Court disagrees with the government's characterization of the Holloway opinion and the matters presented to the Kentucky Supreme Court for discretionary review.

In Holloway, the passenger of an automobile was killed after the driver of the car, his wife, lost control and struck a tree. Holloway, 2008 WL 4754872, at *1. The husband's estate filed suit asserting a wrongful death claim against his wife. Id. The trial court dismissed the matter after concluding that it would be impossible for the wife, the sole beneficiary under Kentucky's wrongful death statute, to recover; for she and her husband, whom she claimed was partially responsible for the accident, were together,100% at fault. Id. On appeal, the estate

argued that the trial court erred by failing to properly consider the Seaboard court's holding: a negligent beneficiary is not always precluded from recovering under comparative negligence principles. Id. at *2. The appellate court discussed the facts of Seaboard, described the Seaboard court's methodology in calculating damages, and affirmed the decision of the trial court, finding that the facts of Seaboard were distinguishable. Id. (noting that in Seaboard, unlike Holloway, there were two statutory beneficiaries and, in addition, there was a third-party tortfeasor). Because the facts were distinguishable, the court simply had no reason to approve or disapprove of the damages methodology utilized by the Seaboard court. Nor was it a matter presented to the Kentucky Supreme Court in the plaintiff's motion for discretionary review.

Under Erie R.R. v. Tompkins, 304 U.S. 64 (1938), this Court must decide whether the Kentucky Supreme Court, if confronted with the issue, would adopt the methodology utilized in Seaboard. See Kingsley Assocs., Inc. v. Moll PlastiCrafters, Inc., 65 F.3d 498, 507 (6th Cir. 1995) (citation omitted) (federal courts must "predict" how the state's highest court would rule upon an issue). Of course, "decisions of the state appellate courts . . . should not be disregarded unless . . . [the trial court is] presented with persuasive data that the [state's] Supreme Court would decide otherwise." Id. (citation omitted). Here, the Court finds that there is persuasive data to suggest that the Kentucky Supreme Court would not follow the damages methodology utilized by the Seaboard court; namely, that the methodology is contrary to the principle of comparative negligence set forth by the Kentucky Supreme Court in Hilen.

In Hilen, the Kentucky Supreme Court discussed the proper methodology for apportioning fault in cases of contributory negligence. "In such cases contributory negligence

5

will not bar recovery but shall reduce the total amount of the award in the proportion that the claimant's contributory negligence bears to the total negligence that caused the damages." Hilen, 673 S.W.2d at 720. This principle of comparative fault was later codified by the Kentucky legislature. Owens Corning Fiberglas Corp. v. Parrish, 58 S.W.3d 467, 473-74 (Ky. 2001). Under the applicable statute, "the court . . . shall make findings indicating: (a) The amount of damages each claimant would be entitled to recover if contributory fault is disregarded; and (b) The percentage of the total fault of all the parties to each claim that is allocated to each claimant, defendant, third-party defendant, and person who has been released from liability under subsection (4) of this section." KRS 411.182(1). The court is then required to "determine the award of damages to each claimant in accordance with the findings, . . . and shall determine and state in the judgment each party's equitable share of the obligation to each claimant in accordance with the respective percentages of fault." KRS 411.182(3). This is the methodology the Court utilized in calculating the amount Mr. and Mrs. Eaves could recover under Kentucky's wrongful death statute. In its Findings of Fact and Conclusions of Law, the Court found that the United States was 80% at fault in causing the estate's damages, and therefore entered judgment against the United States for 80% of those damages. The United States urges that the Court enter a judgment for only 72% of those damages. Pursuant to Hilen, the Court rejects this request.

### III. ALLOCATION OF FAULT

The government also argues that the Court erred in its legal analysis because it failed to consider "the nature of the conduct of each party at fault" in allocating liability to Mr. and Mrs.

6

Eaves. In particular, the government takes aim at the following finding of the Court:

> The Court does not share the government's belief that more fault should be attributed to the Eaveses because of what they may have been engaged in at the time of the accident. The fact which contributed to this accident was that they were parked in the emergency lane—not that they may have been having sex at the time. As the evidence in this tragic case shows, using the emergency lane is a risky endeavor. The risk is collision by other vehicles using the highway. The risk is the same whether one pulls over in the emergency lane to make a non-emergency phone call or whether one pulls over to engage in sexual activity. In either case, the fault contributing to an accident is the act of using the emergency lane for a non-emergency purpose. The nature of the non-emergency is of no consequence.

(DN 83 at p. 12.) The government insists that pursuant to Hilen v. Hays and Kentucky's comparative fault statute, more fault must be attributed to the Eaveses because they were engaged in sexual activities at the time of the crash. Although these authorities do state that the factfinder must "consider . . . the nature of the conduct of each party at fault[,]" KRS 411.182(2), neither authority mandates that a greater percentage of fault be attributed to a party because of his or her conduct. All that is required is that the factfinder "consider" the conduct and determine whether fault should be attributed to the party because of that conduct. Here, the Court thoroughly considered the Eaves' conduct and found that it was "of no consequence," a determination that Kentucky's comparative fault statute leaves solely to the factfinder. See KRS 411.182 ("the court . . . shall make findings indicating . . . [t]he percentage of the total fault of all the parties to each claim that is allocated to each claimant, defendant, third-party defendant, and person who has been released from liability . . . ."). The government clearly disagrees with the Court's factual findings, but the Court sees no reason to depart from them.

7

## IV. PRESENT VALUE

Lastly, the government argues that the Court's use of the total-offset methodology to reduce Trinity's future economic damages to present value results in an excessive award of future earnings. The government recognizes, though, that there is no prohibition against the use of such methodology so long as it is the result of "a deliberate choice, rather than assuming that it is bound by a rule of state law." Jones & Laughlin Steel Corp. v. Pfeifer, 462 U.S. 523, 552-53 (1983). In this case, the Court heard from two experts regarding this issue. After trial, the parties thoroughly briefed this matter for the Court's consideration. And after carefully considering the matter, the Court agreed with Dr. Missun, the plaintiffs' expert, that the total-offset methodology most "accurately reflect[ed] Trinity's lost earning capacity over her lifetime when reduced to present value." (DN 83 at p. 23.) The Court does not find a sufficient reason to amend these findings.

## V. CONCLUSION

Accordingly, the motion by the defendant, United States of America, to alter or amend [DN 85] is **GRANTED in part** and **DENIED in part**. **IT IS FURTHER ORDERED** that the judgment entered on February 5, 2010, is **VACATED**. A new judgment will be entered consistent with this Memorandum Opinion.

cc:  Counsel of Record